1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

JACQUELINE PLETCHER,

11

Plaintiff,

CASE NO. 13-cv-05559 RBL

12

v.

REPORT AND
RECOMMENDATION ON
PLAINTIFF'S COMPLAINT

13

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

14

Noting Date: July 11, 2014

15

Defendant.

16

17

 This matter has been referred to United States Magistrate Judge J. Richard

18

Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR

19

4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261,

20

271-72 (1976). This matter has been fully briefed (*see* ECF Nos. 15, 16, 17).

21

 After considering and reviewing the record, the Court finds that the ALJ

22

erroneously evaluated the medical opinion evidence. These errors were harmful, and

23

24

1 therefore the Commissioner's decision should be reversed and remanded for further

2 proceedings.

3 <u>BACKGROUND</u>

4 Plaintiff, JACQUELINE PLETCHER, was born in 1961 and was 46 years old on

5 the alleged date of disability onset of January 31, 2008 (*see* Tr. 147, 155).  Plaintiff,

6 through her attorney, amended the alleged onset date to August 1, 2010 at the

7 administrative hearing (Tr. 723).  Plaintiff has a GED (Tr. 194).   She has past work

8 experience as a sealer aircraft parts, a caregiver, a mail carrier, a dispensing optician, a

9 stock clerk, a vending machine attendant, and an apartment manager (Tr. 761-72).

10 The ALJ found that plaintiff has at least the severe impairments of "asthma,

11 tobacco abuse, major depressive disorder (MDD), generalized anxiety disorder (GAD),

12 and rule-out bipolar NOS (20 CFR 404.1520(c) and 416.920(c))" (Tr. 18).

13 At the time of the hearing, plaintiff was living with her boyfriend, but had been

14 living with her daughter, sister, and other family members since 2010 (Tr. 731-32).

15 <u>PROCEDURAL HISTORY</u>

16 Plaintiff filed an application for disability insurance ("DIB") benefits pursuant to

17 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to

18 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act (*see* Tr. 147-48, 154-55).

19 Plaintiff later filed an application for Disabled Widow's Benefits that was escalated to

20 hearing level to be considered with her other applications (Tr. 15, 18; ECF No. 15, p. 2).

21 The applications were denied initially and following reconsideration (Tr. 90-97, 98-108).

22 Plaintiff's requested hearing was held before Administrative Law Judge Mattie Harvin-

1   Woode ("the ALJ") on July 17, 2012 (*see* Tr. 720-70).  On August 31, 2012, the ALJ

2   issued a written decision in which the ALJ concluded that plaintiff was not disabled

3   pursuant to the Social Security Act (*see* Tr. 15-30).

4         On May 18, 2013, the Appeals Council denied plaintiff's request for review,

5   making the written decision by the ALJ the final agency decision subject to judicial

6   review (Tr. 3-6).  *See* 20 C.F.R. § 404.981.  Plaintiff filed a complaint in this Court

7   seeking judicial review of the ALJ's written decision in July, 2013 (*see* ECF Nos. 1, 3).

8   Defendant filed the sealed administrative record regarding this matter ("Tr.") on October

9   17, 2013 (*see* ECF No. 12).

10        In plaintiff's Opening Brief, she raises the following issues:   (1) Whether or not

11  the ALJ properly considered the opinions of Enid Griffin, Psy.D., John Gonsoulin, M.D.,

12  and Michael Regets, Ph.D.; (2) Whether or not the ALJ gave sufficient reasons for

13  rejecting the opinion of Jon Mortensen, PA-C; and (3) Whether or not the ALJ's finding

14  that plaintiff could perform past relevant work was supported by substantial evidence and

15  free of legal error (*see* ECF No. 15, p. 1).

16  STANDARD OF REVIEW

17        Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

18  denial of social security benefits if the ALJ's findings are based on legal error or not

19  supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d

20  1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

21  1999)).

DISCUSSION

**(1)    Whether or not the ALJ properly considered the opinions of Enid Griffin, Psy.D., John Gonsoulin, M.D., and Michael Regets, Ph.D.**

Plaintiff challenges the ALJ's evaluations of the opinions of Dr. Griffin, Dr. Gonsoulin, and Dr. Regets, arguing that the ALJ's RFC failed to account for non-exertional limitations these doctors assessed.  Contrary to these opinions, the ALJ found that plaintiff had the residual functional capacity ("RFC") to, in relevant part, "perform simple tasks and some complex and some detailed tasks with occasional coworker interaction but no public interaction" (Tr. 19).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)).  Even if a treating or examining physician's opinion is contradicted, that opinion can be rejected only "for specific and legitimate reasons that are supported by substantial evidence in the record."  *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews, supra*, 53 F.3d at 1043; *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).  The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes, supra*, 881 F.2d at 751).

In addition, the ALJ must explain why her own interpretations, rather than those of the doctors, are correct.  *Reddick, supra*, 157 F.3d at 725 (*citing Embrey, supra*, 849 F.2d

at 421-22).  But, the Commissioner "may not reject 'significant probative evidence' without explanation."  *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))).  The "ALJ's written decision must state reasons for disregarding [such] evidence."  *Flores, supra*, 49 F.3d at 571.

In addition, according to Social Security Ruling ("SSR") 96-8p, an RFC assessment by the ALJ "must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  *See* SSR 96-8p, 1996 SSR LEXIS 5 at *20.  Although "Social Security Rulings do not have the force of law, [n]evertheless, they constitute Social Security Administration interpretations of the statute it administers and of its own regulations."  *See Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989) (*citing Paxton v. Sec. HHS*, 865 F.2d 1352, 1356 (9th Cir. 1988); *Paulson v. Bowen*, 836 F.2d 1249, 1252 n.2 (9th cir. 1988)) (internal citation and footnote omitted).  As stated by the Ninth Circuit, "we defer to Social Security Rulings unless they are plainly erroneous or inconsistent with the [Social Security] Act or regulations."  *Id.* (*citing Chevron USA, Inc. v. NRDC, Inc.*, 467 U.S. 837, 842-45 (1984); *Paxton, supra*, 865 F.2d at 1356) (footnote omitted).

A.      **Dr. Griffin**

Dr. Griffin examined plaintiff in September 2010 (Tr. 267-76).  She diagnosed plaintiff with major depressive disorder, recurrent, moderate; anxiety disorder, NOS; and rule-out bipolar disorder (Tr. 269).  Dr. Griffin opined plaintiff had moderate limitations

1  in her ability to learn new tasks, perform routine tasks, relate appropriately to co-workers

2  and supervisors, interact appropriately in public contacts, and maintain appropriate

3  behavior in a work setting (Tr. 270).  She further opined that plaintiff had marked

4  limitations in her ability to exercise judgment, make decisions, and respond appropriately

5  to and tolerate the pressures and expectations of a normal work setting (*id.*).

6         The ALJ gave "some weight" to Dr. Griffin's opinions of marked limitations but

7  did not accept all of her conclusions because the opinions "are not fully consistent with

8  the facts of this case, as the claimant has demonstrated some ability to exercise judgment,

9  make decisions, and handle pressures and expectations by successfully handling being

10  homeless.  In other words, while she might have some difficulty in these areas, it is not to

11  a marked degree" (Tr. 27).  The ALJ did not discuss further Dr. Griffin's opinions of

12  moderate limitations.

13

14         Plaintiff first argues that the ALJ did not provide a specific and legitimate reasons

15  to reject Dr. Griffin's opinions of marked limitations.  Specifically, plaintiff contends the

16  ALJ did not explain what it means to "successfully handle[] being homeless" (Tr. 27) or

17  how such an accomplishment would establish that plaintiff was able to exercise

18  judgment, make decisions, or respond appropriately to and tolerate pressures and

19  expectations.  The Court agrees. Homelessness is not a sign of success. Homelessness,

20  generally, is not a condition of one's choosing.  To the contrary, being homeless may

21  very well demonstrate that a person is incapable of tolerating the pressures and

22  expectations of a work environment.  And attributing certain skills to homelessness is

23  hardly a legitimate reason for discounting Dr. Griffin's opinion.

24

1    Defendant argues that the ALJ provided a reasonable basis for this conclusion by

2    directing the Court to the ALJ's step three finding that plaintiff had mild restriction in

3    activities of daily living and could handle personal care without problems or reminders,

4    prepare meals, go outside daily, walk, drive, and shop (Tr. 19, 228-30).  The problem

5    with defendant's argument is that it was not made by the ALJ, but rather is a *post hoc*

6    explanation and stretches the ALJ's reasoning beyond the reasonable inferences that the

7    Court may draw from the ALJ's opinion, and cites evidence that the ALJ did not.  *See*

8    SSR 86-8p ("Reasonable inferences may be drawn, but presumptions, speculations and

9    suppositions should not be substituted for evidence."); *Connett v. Barnhart*, 340 F.3d

10   871, 874 (9th Cir. 2003) (district court erred in affirming based on evidence the ALJ did

11   not discuss).

12

13    Defendant also contends the ALJ properly rejected Dr. Griffin's opinion as based

14   on plaintiff's self-reports.  "An ALJ may reject a treating [or examining] physician's

15   opinion if it is based 'to a large extent' on a claimant's self-reports that have been

16   properly discounted as incredible."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir.

17   2008) (quoting *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)).

18   Here, however, the ALJ did not reject Dr. Griffin's opinion of plaintiff's functional

19   limitations as based to a large extent on discredited self-reports.  Rather, in summarizing

20   the medical evidence, the ALJ merely noted that "Dr. Griffin rated the claimant's

21   depression and anxiety as moderate, which must have been based on the claimant's

22   reports, at least as to anxiety, because Dr. Griffin noted that she did not observe any

23

24

anxiety" (Tr. 21).  To interpret this observation as defendant suggests would be speculative, at best, and not based on a reasonable inference.  *See* SSR 86-8p.

Dr. Griffin performed a mental status examination ("MSE") (Tr. 275-77). The Court notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Examination allows the organization, completion and communication of these observations." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993). "Like the physical examination, the Mental Status Examination is termed the *objective* portion of the patient evaluation." *Id.* at 4 (emphasis in original).

The Mental Status Examination generally is conducted by medical professionals skilled and experienced in psychology and mental health. Although "anyone can have a conversation with a patient, [] appropriate knowledge, vocabulary and skills can elevate the clinician's 'conversation' to a 'mental status examination.'" Trzepacz, *supra*, The Psychiatric Mental Status Examination 3. A mental health professional is trained to observe patients for signs of their mental health not rendered obvious by the patient's subjective reports, in part because the patient's self-reported history is "biased by their understanding, experiences, intellect and personality" (*id.* at 4), and, in part, because it is not uncommon for a person suffering from a mental illness to be unaware that her "condition reflects a potentially serious mental illness." *Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (citation omitted).  Therefore, defendant's supposition that the ALJ rejected Dr. Griffin's opinion based on the subjective nature of plaintiff's complaints

is not only unsupported by the record, but would not serve as a specific and legitimate

reason for rejecting Dr. Griffin's opinion.

Plaintiff next argues the ALJ erred by failing to give any reason for not adopting

Dr. Griffin's opinion that plaintiff would have moderate limitations performing routine

tasks, relating to supervisors, or maintaining appropriate behavior.  Defendant responds

that the ALJ rejected these moderate limitations because of inconsistencies in Dr.

Griffin's opinion and because they were based on plaintiff's discredited self-reports.

Defendant's assertions, however, are not based on reasonable inferences from the record.

In fact, the ALJ did not mention these opinions in her decision, much less provide

specific and legitimate reasons for rejecting them.  Because the RFC is not consistent

with Dr. Griffin's opinions of moderate limitations, the ALJ erred by failing to properly

reject them.  *See* SSR 96-8p ("If the RFC assessment conflicts with an opinion from a

medical source, the adjudicator must explain why the opinion was not adopted.").

Furthermore, the ALJ's erroneous rejection of Dr. Griffin's opinion was harmful.

The Ninth Circuit has "recognized that harmless error principles apply in the Social

Security Act context."  *Molina, supra*, 674 F.3d at 1115 (*citing Stout v. Comm'r, Soc.

Sec. Admin.*, 454 F.3d at 1054 (collecting cases)).  The Court noted multiple instances of

the application of these principles.  *Id*. (collecting cases).  The court noted that "several of

our cases have held that an ALJ's error was harmless where the ALJ provided one or

more invalid reasons for disbelieving a claimant's testimony, but also provided valid

reasons that were supported by the record."  *Id.* (citations omitted).  The Ninth Circuit

noted that "in each case we look at the record as a whole to determine [if] the error alters

the outcome of the case." *Id.* The court also noted that the Ninth Circuit has "adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Id.* (*quoting Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (other citations omitted). The court noted the necessity to follow the rule that courts must review cases "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Id.* at 1118 (*quoting Shinsheki, supra*, 556 U.S. at 407 (*quoting* 28 U.S.C. § 2111) (codification of the harmless error rule)). In contrast to the instances where an ALJ's error is harmless, here, the ALJ's step four and step five findings are based on VE testimony that did not take into account all of the limitations Dr. Griffin assessed. As such, these findings are not supported by substantial evidence. *See Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (a VE's testimony based on an incomplete hypothetical lacks evidentiary value to support a finding that a claimant can perform jobs in the national economy) (citing *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991)).

As discussed below, remand is the appropriate remedy for the ALJ's erroneous evaluation of Dr. Griffin's opinion. On remand, the ALJ should evaluate Dr. Griffin's opinion anew and, as necessary, develop the record, revise plaintiff's RFC, and proceed with steps four and five of the sequential evaluation process.

### B.    Dr. Gonsoulin

Dr. Gonsoulin reviewed some of plaintiff's medical records and conducted a psychiatric evaluation in January 2011 (Tr. 370-74). Dr. Gonsoulin diagnosed plaintiff with major depressive disorder and generalized anxiety disorder (Tr. 373). He opined:

I believe that she is able to perform simple and repetitive tasks, though may have some difficulty with detailed and complex tasks. The claimant may have some difficulty accepting instructions from a supervisor as she had some difficulty responding to questions that require a concrete response; however she was able to follow a 3 step command without issue. She could interact appropriately with coworkers and the public. She would likely be able to maintain regular attendance though may have some interruptions that would occur during a normal work week secondary to her psychiatric illness. My impression is that she would likely have some difficulty dealing with the usual stress encountered in a competitive work environment.

(Tr. 374). The ALJ gave Dr. Gonsoulin's opinion "great weight because it is consistent with the examination and the claimant's report of her abilities" (Tr. 26).

Plaintiff contends the ALJ erred by purporting to give Dr. Gonsoulin's opinion great weight but failing to incorporate all of his opined limitations into the RFC. Specifically, she asserts the RFC is inconsistent with Dr. Gonsoulin's opinion that plaintiff "may have some difficulty with detailed and complex tasks," "may have some interruptions that would occur during a normal work week," and "would likely have some difficulty in dealing with the usual stress encountered in a competitive work environment." Defendant responds that the ALJ was not required to incorporate the speculative portions of his opinion into the RFC. *See Vincent, supra*, 739 F.2d at 1394-95 (ALJ "need not discuss all evidence presented" but must "explain why significant probative evidence has been rejected").

The Court agrees with defendant as to the opinions regarding detailed and complex tasks and workweek interruptions, and with plaintiff as to the opinion regarding workplace stress. Here, the difference lies between the words "may" and "likely."

1   RFC is the *most* a claimant can do considering his or her limitations or restrictions.

2   *See* SSR 96-8p.  A claimant carries the burden of establishing disability based on a

3   preponderance of the evidence.  *See* 20 C.F.R. § 404.902.  "Preponderance of the

4   evidence means such relevant evidence that as a whole shows that the existence of the

5   fact to be proven is *more likely than not*."  20 C.F.R. § 404.901 (emphasis added).  Here,

6   Dr. Gonsoulin's opinions that plaintiff "*may* have some difficulty with detailed and

7   complex tasks" and "*may* have some interruptions that would occur during a normal work

8   week" do not make it "more likely than not" that these possible limitations would affect

9   plaintiff's ability to work.  Given that these are opinions of only possible—not likely—

10  limitations, they do not establish that the RFC erroneously reflected *more* than plaintiff

11  can do.  Thus plaintiff has not established that the ALJ erred by omitting these opinions

12  from the RFC.  *See Vincent, supra*, 739 F.2d at 1394-95 (ALJ need only explain why

13  significant, probative evidence has been rejected).

14  

15  In contrast, the Dr. Gonsoulin opined plaintiff "would *likely* have some difficulty

16  in dealing with" workplace stress (emphasis added).  Because Dr. Gonsoulin's opinion

17  was given on a more-likely-than-not basis, it was significant and probative.  *See id.*

18  Moreover, it is not apparent that the RFC accounts for this limitation.  *See Turner v.*

19  *Comm'r of Social Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (ALJ incorporated

20  opinions by assessing RFC limitations "entirely consistent" with limitations assessed by

21  physician).  As this matter is being remanded for reevaluation of Dr. Griffin's opinion,

22  the ALJ should also reevaluate Dr. Gonsoulin's opinion that plaintiff would "likely have

23  

24

some difficulty in dealing with the usual stress encountered in a competitive work environment," and if she accepts this opinion, explain how it is accounted for in the RFC.

## C.    Dr. Regets

In February 2011, Dr. Regets reviewed plaintiff's medical record and opined that she can understand, remember, concentrate on, and persist to complete "simple repetitive tasks but would have difficulty with more complex and detailed [tasks]"; "could be expected to have some difficulty interacting w/ supervisors, coworkers, and the general public but not so severe as to preclude all work"; and "could experience difficulty w/ stress in the work place" (Tr. 41-42).  The ALJ gave Dr. Regets's opinion "great weight, as it is consistent with the overall record and the claimant's reports of abilities" (Tr. 26).

Plaintiff contends the ALJ erred by giving Dr. Regets's opinion "great weight" but failing to adopt his opinion that plaintiff would have difficulty with complex and detailed tasks, interacting with supervisors, and dealing with workplace stress.  Defendant responds that the ALJ properly addressed the significant, probative evidence while excluding indefinite or speculative restrictions.  Defendant also asserts that any error regarding the complexity of the work was harmless because the ALJ identified unskilled work that plaintiff could perform.

The Court finds no error with respect to Dr. Regets's opinion that plaintiff "*could* experience difficulty with stress in the workplace."  As discussed above with respect to Dr. Gonsoulin, an opinion that plaintiff "could" have difficulty does not establish the limitation on a more-likely-than-not basis.  Thus the ALJ was not required to incorporate the limitation into the RFC.  The Court, however, agrees with plaintiff that the ALJ erred

by failing to account for Dr. Regets's opinion that she would have difficulty with more complex and detailed tasks and with supervisor interactions.  *See* SSR 96-8p ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").  These opinions are not indefinite or speculative, as defendant argues.  Although the error as to complex and detailed tasks may be harmless, this case is being remanded to correct other harmful errors.  Accordingly, on remand, the ALJ should reevaluate Dr. Regets's opinions regarding complex and detailed tasks and supervisor interactions.

**(2)     Whether or not the ALJ gave sufficient reasons for rejecting the opinion of Jon Mortensen, PA-C.**

Mr. Mortensen began treating plaintiff in November 2010 (Tr. 413-14).  In February 2012, he opined plaintiff was not able to perform any level of work on a regular and sustained basis because of "recurrent asthma exacerbations and uncontrolled depression and anxiety" (Tr. 678).  He also opined plaintiff would have been absent from work for three or more days per month due to "frequent exacerbations of her asthma. Anxiety and depression would also frequently make it difficult for her to work" (Tr. 679).

The ALJ gave Mr. Mortensen's opinion "no weight" because "the claimant reported her asthma limitations were only intermittent and her depression and anxiety were improving with medication" (Tr. 26).  The ALJ also found that the opinion was "not consistent with the claimant's reports of being able to perform significant daily activities independently, such as getting food stamps, shopping for herself, making her own meals, doing laundry, washing dishes, and cleaning" (Tr. 26-27).

Mr. Mortensen is considered an "other source."  Pursuant to the relevant federal regulations, in addition to "acceptable medical sources," that is, sources "who can provide evidence to establish an impairment," 20 C.F.R. § 404.1513 (a), there are "other sources," such as friends and family members, who are defined as "other non-medical sources" and "other sources" such as nurse practitioners, therapists and chiropractors, who are considered other medical sources[1], *see* 20 C.F.R. § 404.1513 (d); *see also Turner, supra*, 613 F.3d at 1223-24 (*citing* 20 C.F.R. § 404.1513(a), (d)); SSR 06-3p, 2006 SSR LEXIS 5 at *4-*5, 2006 WL 2329939.  An ALJ may disregard opinion evidence provided by "other sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so." *Turner, supra*, 613 F.3d at 1224 (*quoting Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)); *see also Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  This is because in determining whether or not "a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout, supra*, 454 F.3d at 1053 (*citing Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) and (e), 416.913(d)(4) and (e)).

The Ninth Circuit has characterized lay witness testimony as "competent evidence," noting that an ALJ may not discredit "lay testimony as not supported by medical evidence in the record." *Bruce, supra*, 557 F.3d at 1116 (*citing Smolen, supra*,

---

[1] "Other sources" specifically delineated in the relevant federal regulations also include "educational personnel," *see* 20 C.F.R. § 404.1513(d)(2), and public and private "social welfare agency personnel," *see* 20 C.F.R. § 404.1513(d)(3).

80 F.3d at 1289).  Similar to the rationale that an ALJ may not discredit a plaintiff's testimony as not supported by objective medical evidence once evidence demonstrating an impairment has been provided, but may discredit a plaintiff's testimony when it contradicts evidence in the medical record, *see Smolen*, *supra,* 80 F.3d at 1284, an ALJ may discredit lay testimony if it conflicts with medical evidence, even though it cannot be rejected as unsupported by the medical evidence.  *See Lewis, supra*, 236 F.3d at 511 (An ALJ may discount lay testimony that "conflicts with medical evidence") (*citing Vincent, supra*, 739 F.2d at 1395; *Baylis, supra*, 427 F.3d at 1218 ("Inconsistency with medical evidence" is a germane reason for discrediting lay testimony) (*citing Lewis, supra*, 236 F.3d at 511); *see also Wobbe v. Colvin*, 2013 U.S. Dist. LEXIS 111325 at *21 n.4 (D. Or. 2013) (unpublished opinion) ("*Bruce* stands for the proposition that an ALJ cannot discount lay testimony regarding a claimant's symptoms solely because it is *unsupported* by the medical evidence in the record; it does *not* hold *inconsistency* with the medical evidence is not a germane reason to reject lay testimony") (*citing Bruce, supra*, 557 F.3d at 1116), *adopted by Wobbe v. Colvin*, 2013 U.S. Dist. LEXIS 110195 at *2 (D. Or. 2013) (unpublished opinion).

However, "only 'acceptable medical sources' can [provide] medical opinions [and] only 'acceptable medical sources' can be considered treating sources. *See* SSR 06-03p, 2006 SSR LEXIS 5 at *3-*4 (internal citations omitted).  Nevertheless, evidence from "other medical" sources, that is, lay evidence, can demonstrate "the severity of the individual's impairment(s) and how it affects the individual's ability to function."  *Id.* at *4.  The Social Security Administration has recognized that with "the growth of managed

health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,' . . . have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists." *Id.* at *8. Therefore, according to the Social Security Administration, opinions from other medical sources, "who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects." *Id.*

Relevant factors when determining the weight to be given to an "other" medical source include:

> How long the source has known and how frequently the source has seen the individual; How consistent the opinion is with other evidence; The degree to which the source present relevant evidence to support an opinion; How well the source explains the opinion; Whether [or not] the source has a specialty or area of expertise related to the individuals' impairments(s), and Any other factors that tend to support or refute the opinion.

2006 SSR LEXIS 5 at *11. In addition, the fact "that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' because . . . 'acceptable medical sources' 'are the most qualified health care professionals." *Id.* at *12. However, "depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medial source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source." *Id.* at *12-*13.

Plaintiff contends the ALJ's reasons for rejecting Mr. Mortensen's opinion were not germane.  First, she asserts that contrary to the ALJ's finding, her statement that her asthma limitations were "intermittent" (Tr. 549) is entirely consistent with Dr. Mortensen's opinion that she would miss work at least three days a month due to "frequent" asthma exacerbations.  In response, defendant merely reiterates the ALJ's finding that intermittent limitations are inconsistent with frequent limitations.  Granted, inconsistency with the record is a proper reason to reject a medical opinion.  *See Tommasetti, supra*, 533 F.3d at 1041.  Here, however, the ALJ's finding is not supported by substantial evidence.  "Intermittent" indicates that the asthma limitations started, stopped, and then started again.  "Frequent" indicates how often the asthma limitations occurred.  Asthma limitations could be simultaneously "intermittent" and "frequent"; there is no contradiction.

Second, plaintiff argues the ALJ's finding that her depression and anxiety were improving with medication ignores the fact that, despite some improvement in November and December 2010, the improvement was not substantial and she continued to experience severe symptoms (*see, e.g.*, Tr. 413, 410-11, 407, 434, 428, 431, 468, 463, 458, 455).  Consistent with the record, defendant concedes that plaintiff's depression worsened in 2011 and 2012, but maintains that this was due to her failure to consistently take her medications (*see* Tr. 671).  Although the ALJ noted that a February 2012 treatment note indicated plaintiff had been inconsistent with at least one medication (Tr. 24), the record does not establish that plaintiff was non-compliant with her medication throughout 2011, nor does it establish that her anxiety and depression worsened because

she did not take her medication.  The ALJ's finding that Mr. Mortensen's opinion was inconsistent with the improvement in plaintiff's depression and anxiety due to medication is not supported by substantial evidence.

Finally, although an ALJ may reject a doctor's opinion that is inconsistent with the claimant's level of activity, *see Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001), the Court finds that plaintiff's ability to perform activities of daily living, as noted by the ALJ, is not inconsistent with Mr. Mortensen's opinions.  The fact that plaintiff could get food stamps, shop for herself, make her own meals (consisting of simple foods such as sandwiches or microwavable meals), do laundry, wash dishes, and clean, is not inconsistent with Mr. Mortensen's opinion that she could not work on a regular and sustained basis, eight hours a day, five days a week.  Indeed, there is no evidence that plaintiff spent eight hours a day, five days a week performing these activities.  Similarly, plaintiff's ability to perform these activities is not inconsistent with Mr. Mortensen's opinion that she would miss at least three days of work a month due to her impairments. Defendant relies on *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (2008), however, this case is distinguishable because it involved a credibility determination, not an evaluation of an "other source" medical opinion. In sum, the ALJ failed to provide any germane reason supported by substantial evidence to reject Mr. Mortensen's opinion.  On remand, the ALJ should reevaluate this opinion.

//

//

//

**(3)   Whether or not the ALJ's finding that plaintiff could perform past relevant work is supported by substantial evidence and free of legal error.**

As discussed, the ALJ erred in her consideration of the medical opinion evidence. Because the Court recommends remanding so that the ALJ can reassess plaintiff's RFC, it would be premature for the Court to consider plaintiff's step four arguments at this time.

**(4)   Whether or not the Court should remand for further administrative proceedings or for an award of benefits.**

Generally when the Social Security Administration does not determine a claimant's application properly, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'"  *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  However, the Ninth Circuit has put forth a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed."  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (*quoting Smolen, supra*, 80 F.3d at 1292).  It is appropriate when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman, supra,* 211 F.3d at 1178 (*quoting Smolen*, *supra*, 80 F.3d at 1292).

Here, outstanding issues must be resolved.  *See Smolen, supra*, 80 F.3d at 1292. Furthermore, the decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court.  *Swenson v. Sullivan*, 876 F.2d 683,

689 (9th Cir. 1989) (*citing Varney v. Secretary of HHS*, 859 F.2d 1396, 1399 (9th Cir. 1988)).  Accordingly, the Court deems it appropriate to remand for further administrative proceedings, rather than for an award of benefits.

<u>CONCLUSION</u>

For the stated reasons and based on the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration. **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on July 11**,** 2014, as noted in the caption.

Dated this 11th day of June, 2014.

J. Richard Creatura
United States Magistrate Judge